UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LEE FRANK CUNNINGHAM, JR**, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**THE CITY OF ALABASTER,**<br>**and CURTIS RIGNEY,** )<br>)<br>Defendants. )<br>) | Civil Action Number<br>**2:12-cv-03992-AKK** |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lee Frank Cunningham, Jr. ("Cunningham") filed this action against the City of Alabaster, Alabama ("Alabaster") and Police Chief Curtis Rigney ("Chief Rigney"), in his individual capacity, for alleged violations of the First, Second, and Fourteenth Amendments arising from enforcement of Alabaster's gun carry ordinance. *See* doc. 31. At this time, Cunningham renews his request for a preliminary injunction preventing enforcement of the ordinance, while Defendants seek dismissal of the action due to immunity and lack of jurisdiction. Docs. 11, 18-19. Since Cunningham failed to timely respond to Defendants' motions, the motions are fully briefed and ripe for review.[1] Docs. 19,

---

[1] Additionally, Cunningham's motions for a second extension of time in which to file his response to Defendants' motion to dismiss, docs. 37-38, are **DENIED** as untimely.

21.  In light of the court's finding that Defendants' motion is due to be **GRANTED**, and by extension that Cunningham cannot demonstrate that he is substantially likely to succeed in his underlying action, the court sees no reason to revisit its earlier ruling denying Cunningham's motion for a preliminary injunction.  *See* doc. 10; *Schiavo ex rel. Schindler v.  Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).  Accordingly, Cunningham's amended motion for a preliminary injunction is **MOOT**.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*, at 1949 (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

## II. PROCEDURAL AND FACTUAL BACKGROUND[2]

In February 2012, Cunningham obtained a permit from Shelby County

---

[2] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).
    Additionally, Cunningham amended his complaint after Defendants moved to dismiss. Doc. 31. Accordingly, the court takes the facts from the amended complaint.

Sheriff Chris Curry, pursuant to Alabama Code § 13A-11-75, to carry a concealed handgun.  Doc. 31 at ¶ 29.  Cunningham subsequently began researching the scope of his new permit.  *Id*. at ¶ 30.  During his research, Cunningham discovered that Alabaster, where he resides, promulgated an ordinance restricting the unconcealed carry of a firearm within the city.  *Id*. at ¶ 31.  Based on Cunningham's belief that this ordinance directly contradicts Alabama state law governing unconcealed gun carry, even though Cunningham does not have a permit to carry an unconcealed gun, Cunningham sought clarification from former Police Chief Stanley Oliver and current Chief Curtis Rigney.  *Id*. at ¶ 32.  Both officers informed Cunningham that if he carried his pistol openly, they would arrest and prosecute him for violating the Alabaster ordinance.  *Id*.  Following this exchange, Cunningham spoke with the city Clerk, several city councilmen, and Chief Oliver in an attempt to have the Alabaster ordinance repealed.  *Id*. at ¶¶ 34-40.  Eventually, Councilwoman Sophie Martin informed Cunningham that she turned the matter over to the city attorney Jeff Brumlow.  *Id*. at ¶ 41.  When Cunningham contacted Brumlow, Brumlow allegedly suggested that Cunningham "violate the ordinance, get arrested, and 'work something out' at trial." *Id*. at ¶ 42.

     Cunningham continued to contact other persons to obtain information regarding the validity of Alabaster's ordinance.  Purportedly, Officer Tim Glasgow

informed Cunningham that "it was not a crime to openly carry a pistol, except in places like government buildings[,]" whereas Officer Davis stated that "'open carry' was legal under Alabama law but it was illegal in the city of Alabaster due to the city [o]rdinance[.]" *Id*. at ¶¶43-44.  In light of this conflicting information, Cunningham again sought advice regarding the ordinance from Chief Rigney, who informed Cunningham that he would be "arrested 'on the spot'" if he carried a pistol openly in the city.  *Id*. at ¶ 46.

Subsequently, Police Sergeant Grant Humphries from the "investigations division" contacted Cunningham's mother with questions about Cunningham and asked that Cunningham contact him.  *Id*. at ¶ 48.  Cunningham contacted Sgt. Humphries as instructed and relayed to Sgt. Humphries his concerns about the ordinance and plans to file suit to challenge its validity.  *Id*. at ¶ 50.  This conversation allegedly led the Alabaster police officers to begin harassing Cunningham.  *Id*. at ¶ 51.  Cunningham's mother then contacted Chief Rigney, who stated that "he would have all of his officers treat [Cunningham] as 'armed and dangerous' during any contact" and that he was working to have Cunningham's gun permit revoked by the Shelby County Sheriff's Office.  *Id*. at ¶¶ 52-53.  Soon after, the Shelby County Sheriff's Office revoked Cunningham's permit allegedly based on the request by the Alabaster Police Department.  *Id*. at ¶

55. Moreover, based on the allegedly false information provided by the Alabaster officials that Cunningham had confronted the officers and threatened to challenge an officer, and since the issuance of gun permits is discretionary, the Sheriff's Office informed Cunningham that "it would likely be years before [he] was issued another permit." *Id*. at ¶ 57, 62. Also, Chief Rigney allegedly posted Cunningham's picture in the police department "with an inscription describing [Cunningham] as a threat to law enforcement or the community and posted it in a place where it could be viewed by members of the general public" and also flagged Cunningham's driver's license in the computer system as "armed and dangerous." *Id*. at ¶¶ 63-64.

### III. ANALYSIS

Cunningham alleges claims under 42 U.S.C. § 1983 for racial discrimination, Fourteenth Amendment due process violations, and First Amendment infringement, and also seeks a declaratory judgment that the Alabaster ordinance is preempted by Alabama law and the Second Amendment and a permanent injunction to prevent the ordinance's enforcement. *See* doc. 1. However, Defendants contend that these claims are due to be dismissed for failure to meet the pleading standards, lack of subject matter jurisdiction, and qualified immunity. *See* docs. 18-21. The court agrees for the reasons stated below.

**A.     Dismissing In Forma Pauperis Actions**

The in forma pauperis statute allows an indigent litigant to commence an action in federal court without prepayment of fees or costs.  28 U.S.C. § 1915.  However, because these fees and costs "are assumed by the public," the statute authorizes federal courts to dismiss a litigant's action "if satisfied that the action is frivolous or malicious."  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *see also* 28 U.S.C. § 1915.  The court may, in its discretion, consider an in forma pauperis litigant's complaint frivolous if "it lacks an arguable basis either in law or in fact,"  *Neitzke*, 490 U.S. at 325, or fails to state a claim under Fed. R. Civ. P. 12(b)(6), s*ee Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002).

    1.     Equal Protection Under the Fourteenth Amendment

In Count I of his complaint, Cunningham alleges that he was not afforded equal protection of the laws when Defendants threatened to arrest and prosecute him if he violated the gun ordinance and that similarly situated Caucasian persons were not subject to such treatment.[3]  Doc. 1 at 19-20.  Law enforcement officials are tasked with enforcing the laws, including ordinances that citizens like

---

[3] Cunningham captions Count I as "Racial Discrimination" under § 1983, but alleges that he was denied equal protection.  Accordingly, the court presumes that Count I is a Fourteenth Amendment Equal Protection claim.

Cunningham allege are facially invalid, and arresting those suspected of violating these laws. *See Haney v. City of Cumming*, 69 F.3d 1098, 1102 (11th Cir.1995). Informing Cunningham that he could and would be arrested and prosecuted for violating the gun ordinance is not wrongful conduct since those activities are within the duties and responsibilities of the Alabaster officers. Moreover, Cunningham failed to point to any alleged "similarly situated" Caucasian citizen of Alabaster whom the officers failed to inform that the ordinance would be enforced or to allege any facts suggesting that the Alabaster police told Cunningham they would enforce the ordinance against him *because of his race*. Accordingly, the court finds that Count I fails to state a claim and is frivolous under § 1915. Since Cunningham's amended complaint failed to redress this deficiency, *see* doc. 31 at 15-16, Count I is **DISMISSED**.

    2.    Due Process Under the Fourteenth Amendment

In Count II, Cunningham alleges that Defendants deprived him of liberty and property without due process of law in violation of the Fourteenth Amendment by causing the revocation of his Shelby County gun permit. Doc. 1 at 20-21. This claim fails for several reasons. First, Cunningham failed to properly allege a liberty interest in a gun permit. "[L]iberty interests protected by the fourteenth amendment may arise either from the Constitution itself, or from state

law." *Barfield v. Brierton*, 883 F.2d 923, 935, citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).  The Supreme Court has held that the Second Amendment's right to bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008).  It is instead well settled that, short of a complete ban, states may regulate firearms. *McDonald v. City of Chicago, Ill.*, 130 S.Ct. 3020, 3047 (2010). Therefore, the liberty interest Cunningham asserts here must be state-created. *Id*. "To assert a state-created entitlement to a liberty interest, a party must show that the state placed substantive limitations on official discretion." *Barfield*, 883 F.2d at 935 (*quoting Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).  Cunningham failed to make this showing.  Instead, in both the original and amended complaint, Cunningham alleges that the issuance of gun permits in Shelby County is entirely discretionary with no substantive limitations.  *See* doc. 1 at ¶ 56; doc. 31 at ¶ 57.  Accordingly, Cunningham's liberty-based Due Process claim lacks a colorable basis in law or in fact and is **DISMISSED**.

     Second, Cunningham failed to properly allege a property interest in the state-issued gun permit.  "The hallmark of property, . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982).  However, as

discussed above, Cunningham failed to allege that he is entitled to a gun carry permit based on Alabama law or that such a permit, once issued, can only be revoked for cause. *See* docs. 1, 31. Cunningham alleges instead that the issuance and revocation of such permits are entirely discretionary. *See id.* In other words, Cunningham failed to properly plead the requisite property interest. Alternatively, even if he did properly plead his claim, it still fails because the revocation letter incorporated into Cunningham's amended complaint by attachment and reference shows that the Shelby County Sheriff's Office revoked his license "for cause." *See* doc. 31-1 at 2-3. Accordingly, Cunningham's property-based Due Process claim likewise lacks an arguable basis in law or in fact and is **DISMISSED**.

  3. Second Amendment Preemption

In Count III, Cunningham alleges that Alabaster's gun carry ordinance is preempted by the Second Amendment. Doc.1 at 27; doc. 31 at 22. However, as discussed above, the Supreme Court has held that gun regulation by the states or their cities is proper under the Constitution. *See* Section A(2), *supra*. Therefore, the federal preemption claim fails as a matter of law and is **DISMISSED**.

  4. Right to Petition Under the First Amendment

Finally, in Count IV, Cunningham alleges that Defendants infringed upon his First Amendment right to petition the government for redress of grievances by

"threaten[ing] him with arrest, prosecution and incarceration, intimidat[ing] him when he left home and traveling through the City . . ., stigmatized him by posting his picture in a public fashion and labeled him a threat or danger to the police department or the community at large, [and] compared him to the mass murderer who had committed the well-known atrocities in Aurora, Colorado." Doc. 1 at 31; doc. 31 at 25-26.  However, Cunningham also alleged that the Defendants "threatened him with arrest, prosecution and incarceration" only in answering his questions regarding the enforceability of the gun carry ordinance and after he intimated that he desired to carry a gun in violation of this ordinance. *See e.g.*, doc. 31 at ¶ 32.  Nothing in the First Amendment precludes officers from telling citizens that they face arrest if they violate a law.  Therefore, as related to this conduct, Cunningham's First Amendment claim fails.

Further, Cunningham alleges that the "posting [of] his picture," "label[ing] him a threat or danger," and "comparing him to [a] mass murderer" did not occur in public. *Id*. at ¶¶ 63-65.  Rather, the picture was allegedly posted on a flyer in the police department and an officer purportedly told Cunningham's mother that it was only for police use and was taken down at her request, that the labeling of Cunningham as "armed and dangerous" was only in the non-publicly available police computer system and after Cunningham indeed obtained a permit to arm

11

himself with a concealed weapon, and that the comparison to the Aurora shooter was made in private in explanation for why Cunningham's desire to openly carry a weapon raised red flags regarding others' safety. *Id.* Precautionary measures designed to protect officers do not infringe on First Amendment rights, especially where, as here, Cunningham failed to allege that Defendants attempted to prevent him from challenging the validity of the ordinance. *See e.g.*, doc. 31. Accordingly, Cunningham failed to allege a colorable basis for his First Amendment claim and thus Count IV is **DISMISSED**.

**B.    Subject Matter Jurisdiction**

In light of the court's decision to dismiss the federal claims, Cunningham's only remaining claims arise under Alabama law. As the court stated in its December 13, 2012 Order, doc. 8, federal courts are courts of limited jurisdiction that may only handle cases arising under federal law or involving disputes between parties with diverse citizenship. *See* 28 U.S.C. §§ 1331-1332; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because diversity of citizenship does not exist here and no federal claims remain, this court lacks jurisdiction to hear Cunningham's state law claims. Therefore, the state law claims are **DISMISSED**.

### IV. CONCLUSION

For the reasons stated above, Cunningham's claims arising under federal law are frivolous under 28 U.S.C. § 1915 and, accordingly, **DISMISSED with prejudice**. Additionally, the court lacks jurisdiction over Cunningham's claims arising under Alabama law and those claims are **DISMISSED without prejudice**.

**DONE** this 27th day of February, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE